**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

---

AURA MOODY,

Plaintiff-Appellant,

-against- **Docket No.: 26-1997**

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ET AL

Respondents-Appellees.

---

**PLAINTIFF-APPELLANT'S OPPOSITION TO THE UNITED FEDERATION OF TEACHERS AND MICHAEL MULGREW'S MOTION TO WITHDRAW APPEARANCE AND CORRECT THE DOCKET DESIGNATION**

Plaintiff-Appellant Aura Moody ("Appellant" or "Moody"), proceeding pro se, states as follows:

**BACKGROUND**

1. **In 1999**, Appellant was hired by the New York City Department of Education ("DOE") as a Bilingual School Social Worker (Spanish) and became a member of a labor union, the United Federation of Teachers ("UFT"). She was objectively qualified for her position and tenured.

2. **On October 4, 2021**, Appellant was unlawfully placed on Leave Without Pay ("LWOP") while her appeal on the denial of her application for a medical exemption from the City of New York ("City")'s COVID-19 Vaccine Mandate ("Vaccine Mandate") remained pending and undecided. The DOE did not follow its own internal procedures for the processing of her applications and appeals for exemptions set forth in the Impact Bargaining issued by Arbitrator

Martin Scheinman on September 10, 2021, mandating COVID-19 vaccines for DOE employees, contractors and others ("UFT Award" or "Scheinman Award").

3. The DOE ignored the provision **on page 11 of the UFT Award** when it administratively placed Appellant on LWOP: "*While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll.*" *See* DktEntry 58, p. 75. **Appellant was to remain on payroll until at least October 13, 2021**, the date HR Connect rendered a final decision on her request for a medical exemption. *See* DktEntry 58-1, p. 8.

4. **On February 11, 2022**, Appellant was terminated while nearing retirement age, without notification and due process, in violation of the terms and conditions of employment. She was replaced by a younger selectee outside of her protected class.

5. **Appellant considers herself an active employee since her employment was never properly terminated.** To date, she has not been served with a Final Notice of Placement on Leave Without Pay, Charge or Notice of Employment Termination prior to or after her forced separation. These documents were reportedly sent to the employees via email, which she never received as the DOE blocked her email account on October 15, 2021, while she was placed on involuntary unpaid leave. *See* DktEntry 45, pp. 150. The DOE failed to restore Appellant's email account despite timely notification. *See* DktEntry 45, pp. 94, 97, 101, 147-150, 153-154.

6. The DOE as a public employer and the UFT as an employee organization violated federal, state and city laws in many terms, as well as the Collective Bargaining Agreement for School Social Workers and School Psychologists 2009-2018 ("CBA"), the UFT Memorandum of Agreement 2018 - Successor Agreement to the 2009-2018 CBA, New York Labor Law § 195(6) and Labor Management Relations Act §301 by terminating Appellant without notification. **Article X of the CBA** mandates formal written notice prior to termination. **New York Labor Law § 195(6)** requires employers to provide written notice within five working days, specifying the termination date and end of benefits, regardless of the reason for termination. **New York State Education Law § 3020(1)** prohibits termination without due process: "*No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just*

*cause and in accordance with the procedures specified in section [3020]-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement*."

7. The DOE failed to protect Appellant's statutory and regulatory rights as an employee after she sought: a medical exemption to the Vaccine Mandate based on natural immunity, a religious exemption grounded in her sincerely held Catholic beliefs, and an accommodation to work remotely. The DOE did not follow its own internal procedures for the processing of her applications and appeals for exemptions or accommodations, as set forth in the UFT Award.

8. The UFT and UFT President Michael Mulgrew (together, "UFT and Mulgrew") abdicated their duty to Appellant by allowing the DOE to violate basic principles of law and failing to fully assist her in the processing of her accommodation requests despite her outcry for help and making them aware of these violations. *See* DktEntry 45, pp. 93, 96, 147, 153, 169; DktEntry 58, pp. 89-90, 95-121, 125-130, 156-176; Doc 58-2, pp. 3-4, 7-18; Doc. 58-3, pp. 1-12.

9. Appellant appeals the dismissal of this action against the Equal Employment Opportunity Commission ("EEOC") and several federal officials (together, "EEOC") arising from the agency's mishandling of her Charge of Discrimination filed against the DOE and UFT on March 3, 2022 ("Charge"). Appellant also appeals the denial of her Motion to Alter or Amend the Judgment and for Leave to File an Amended Complaint. In God Petitioner Trusts!

## STATEMENT OF THE CASE, MATERIAL FACTS, UNDERLYING EVENTS AND PROCEDURAL HISTORY

### New York City's Health Orders Mandating COVID-19 Vaccines

10. **On July 26, 2021**, without consulting with the unions, Mayor Bill de Blasio announced that the City would require All municipal workers to get COVID-19 vaccines or face weekly COVID-19 testing ("Vax-or-Test Policy") as a "job requirement" or "condition of employment." *See* DktEntry 45, pp. 140-141; DktEntry 58, pp. 83-84.

11. **In late August 2021**, the UFT undermined the Municipal Labor Committee ("MLC") and its constituent unions by entering into negotiations with the DOE over the implementation of the Vaccine Mandate. This happened while MLC leaders and City officials were arriving at a collaboratively negotiated program to implement the Vax-or-Test Policy for All City employees, a vote from the full MLC membership was scheduled, and a Court hearing was set for September 22, 2021. *See* DktEntry 45, p. 142-145; DktEntry 58, p. 85-88.

12. **On August 24, 2021**, the New York City Commissioner of Health and Mental Hygiene issued a Health Order that changed the "Vax-or-Test Policy" for All City employees to "Vaccine Only" for DOE employees, contractors and others. *See* DktEntry 58, pp. 91-94. **On September 15, 2021**, Commissioner Dave Chokshi rescinded his Health Order as it did not provide for exemptions or accommodations, nor did it address matters of due process with regard to job and benefit protections. *See* DktEntry 45, p. 136-139. **On September 28, 2021**, Commissioner Chokshi amended his Health Order to extend the deadline to provide any proof of vaccination by October 1, 2021 or before beginning employment. **On October 10, 2021**, Commissioner Chokshi issued another Health Order requiring COVID-19 vaccination for City employees and City contractors who were not subject to another Health Order.

13. Appellant and similarly situated individuals were discriminated against as the DOE was the first City agency that imposed a COVID-19 vaccine mandate. Other agencies required weekly testing in lieu of vaccines, allowing their employees who chose not to get vaccinated to remain on payroll. **The UFT Award became the basis for similar awards and agreements with other unions** such as the Council of School Supervisors and Administrators ("CSA Award") and District Council 37 ("DC 37 Agreement").

**UFT Award Mandating COVID-19 Vaccines For DOE Personnel**

14. **On September 10, 2021**, after a dispute between the DOE and UFT over medical and religious exemptions, Arbitrator Martin Sheinman issued an impact bargaining award for the 2021-2022 School Year that mandated COVID-19 vaccines for DOE personnel and established a process for assessing and adjudicating requests for exemptions. *See* DktEntry 58, pp. 65-82.

15. The record is replete with indicators and evidence showing that the UFT Award was developed and implemented arbitrarily, capriciously and in bad faith. It was plagued with procedural errors and legal flaws. **Arbitrator Scheinman had no contractual or statutory authority to create a "condition or qualification of employment,"** to wit, COVID-19 vaccines. The CBA and UFT Award are devoid of the phrase. The UFT Award was not ratified by the approximately 183,000 members, as acknowledged by the UFT in previous submissions.

16. **The UFT Award was created under** Commissioner Chokshi's August 24, 2021 **illegal Health Order**, **which was revoked** on September 15, 2021. However, the UFT Award was not amended to reflect those changes, rendering it unenforceable. *See* DktEntry 58, pp. 91-94; DktEntry 45, p. 136-139.

17. The UFT Award and Mayor Bill de Blasio marginalized employees who have religious beliefs and objections to the Vaccine Mandate by establishing that requests be documented in writing by a religious official and that requests only be considered for certain religions.

18. **The UFT Award discriminated against religion** as it limited the eligibility for religious exemptions or accommodations to certain groups. As provided **on page 9 of the UFT Award**, "*Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source) or where the objection is personal, political, or philosophical in nature. Exemptions requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).*" *See* DktEntry 58, p. 73.

19. **On September 24, 2021**, Mayor Bill de Blasio made a statement to the Gothamist that limited the eligibility for religious accommodations: "*De Blasio has said the religious exemptions would also be limited to "two well-established religions, Christian Science and Jehovah's Witnesses, that have a history on this, of a religious opposition.*" *See* DktEntry 58, p. 131.

20. **As a Catholic**, Appellant was not eligible to apply for a religious exemption under the UFT Award and Mayor Bill de Blasio's guidelines before the initially established deadline.

21. **The UFT Award** raises conflict of interest and ethical concerns as Arbitrator Scheinman is believed to be one of the owners of Scheiman Arbitration and Mediation Services ("SAMS"), and he fundraised for Mayor Bill de Blasio, the person who imposed the Vaccine Mandate. *See* DktEntry 45, p. 155.

22. **On September 21 and October 27, 2021,** approximately 15 DOE employees filed two separate lawsuits against, *inter alia*, the City and DOE in the United States District Court for the Southern District of New York ("District Court" or "SDNY") because Commissioner Chokshi's August 24, 2021 Health Order did not provide for exemptions or accommodations, and the UFT Award limited the exemptions to certain religions. **On November 14, 2021,** the United States Court of Appeals for the Second Circuit ("Court of Appeals" or "Second Circuit") Motions Panel determined that the UFT Award was "constitutionally suspect" as the DOE employees who sought religious exemptions were not given broad consideration that adhered to the standards established by Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). **The Second Circuit ordered that accommodations be considered for all sincerely held religious observances, practices and beliefs,** and the Plaintiffs were granted temporary interim relief until the matter was decided by the Merits Panel. **The DOE agreed to extend this same relief to similarly situated employees**. *See* Michael Kane, et al v. Bill De Blasio, et al; Matthew Keil, et al v. The City of New York, et al, Docket No. 21-2678-cv, 21-2711-cv., 19 F. 4th 152, at 162**.**

23. **On November 15, December 15 and December 20 of 2021,** the New York City Commission on Human Rights issued guidelines for COVID-19 accommodations to comply with the Second Circuit's November 14, 2021 Order, prohibiting discrimination, granting reasonable accommodations and prohibiting retaliation on the grounds of disability, pregnancy, childbirth, lactation, religious beliefs or observances, or status as a victim of domestic violence, stalking, or sex offense. "*Employees who are seeking reasonable accommodations because of their religious beliefs should not be required to submit supporting documentation unless their employer has an*

*objective basis to question the sincerity of the religious basis for the employee's inability to show proof of vaccination.*" *See* DktEntry 45, pp. 125-129.

24. **On October 25, 2021**, the MLC and some unions challenged the constitutionality of the Vaccine Mandate. In a decision rendered by the New York City Board of Collective Bargaining ("BCB") **on September 28, 2022** in the matter of *MLC, et al v. City of New York and NYC Department of Health and Mental Hygiene, Docket No. BCB-4458-21*, **the BCB found that the City "breached its duty to bargain in good faith with the unions before adopting the COVID-19 policy,"** in violation of **NYCCBL § 12-306(a)(4)**. The BCB noted that when an employer violates its duty to bargain in good faith, there is also a derivative violation of **NYCCBL § 12-306(a)(1)**. The BCB's decision confirmed Appellant's claim that the UFT was derelict in its duty of fair representation by agreeing to the provisions of the UFT Award.

25. Appellant questioned the legality and enforceability of the UFT Award. **On October 12, 2021**, she sent an email to Mulgrew and other officials that in part reads: "*I insist in challenging the legality of the DOE-UFT Agreement reportedly reached on September 10, 2021 via an Arbitrator. I believe the Arbitration proceeding is faulty, requiring vacatur. It is my impression that the DOE and UFT did not act in good faith by excluding Natural Immunity as a ground for exemption, in disregard of the available data and scientific studies showing that Natural Immunity is fundamental in achieving herd immunity for COVID-19. With all due respect, I feel that the UFT failed to fairly represent the members, specifically the ones who have Natural Immunity, like in my case. Please be reminded that I brought this issue to the attention of the UFT on August 28, 2021 via email, before the DOE-UFT Agreement was reached and the COVID-19 Vaccine Mandate took effect. Thus, I am seeking remedy*." *See* DktEntry 45, pp. 104.

**Procedures For Applying For Exemptions Or Accommodations To The Vaccine Mandate And Appealing The Denials**

26. The established two-stage process for applying and appealing the denials of requests for medical and religious exemptions to the Vaccine Mandate pursuant to the UFT Award failed to meet the minimum standards of law. It was a sham. The allotted time to apply and appeal the

denials was unreasonable. Employees were not provided with ample notice and given enough time to gather the required documentation to process their applications and appeals. Ten (10) days to gather and submit the required documentation in support of their requests was unjustifiable. Further, employees were not afforded the opportunity to be heard at a meaningful time and in a meaningful manner by qualified personnel.

27. **The application process to apply for exemptions or accommodations is described on pages 7-10 of the UFT Award**. *See* DktEntry 58, pp. 65-82. Any requests to be considered as part of this process must be submitted via the Self-Service Online Leave Application System ("SOLAS") system in order to be processed by the DOE. According to the provisions **on pages 9-10**, "*The initial determination of eligibility shall be made by the staff of HR Connect, the Office of Equal Opportunity, and the Office of Employee Relations*." *See* DktEntry 58, pp. 65-82.

28. **The appeal process is described on pages 10-13 of the UFT Award**. *See* DktEntry 58, pp. 65-82. According to the instructions **on page 10**, "*If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination.*" The appeal was to be heard by a Panel of Arbitrators identified by SAMS, who were to issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. As per the instructions **on pages 10-11**, "*The determination of eligibility for an exemption or accommodation shall be expedited and in writing*." In the event of a denial, it was to include a reason. As provided **on page 13**, "*The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution*." The procedures provided no options for appeal beyond SAMS level and the DOE shall cover all arbitration costs from SAMS under this process.

**Appellant's Requests For Exemptions Or Accommodations To The Vaccine Mandate**

29. **The DOE failed to adhere to the provisions of the UFT Award** when determining Appellant's requests for exemptions or accommodations to the Vaccine Mandate. The UFT failed

to pursue various Appellant's grievance requests and remedies and prevented her from utilizing the CBA grievance procedure to seek appropriate remedies. Such actions are discriminatory and a dereliction of duty of fair representation.

30. **On September 23, 2021**, as previously approved and instructed by DOE and UFT officials, Appellant applied for a medical exemption under the grounds of natural immunity. *See* DktEntry 58, p. 118. HR Connect accepted, acknowledged receipt and processed her application. *See* DktEntry 58, p. 117.

31. **On September 24, 2021,** HR Connect denied Appellant's application for the following reason: "*Antibodies alone are not a reason not to get the vaccine*." The determination notice was deficient as to notification and authentication. The decision did not have the names/signatures and credentials of the person(s) who made the decision, and it did not provide information about appeals. It was not supported by scientific data and conclusions of law. It only said "*Your application was reviewed in accordance with applicable City, State, and Federal laws*." *See* DktEntry 58-1, p. 1.

32. **On September 27, October 1 and October 6, 2021**, following the denial of her initial application for a medical exemption, Appellant submitted other requests that were meant to be appeals, but they were processed as "New Applications" due to SOLAS deficiencies of not having an option to appeal under the drop-down menu. *See* DktEntry 45, pp. 86-89, 105, 106; DktEntry 58-1, p. 2-3, 6-7. All requests were denied without a hearing despite Appellant's requests. Contrary to a DOE's later claim, all of her requests for a medical exemption were accepted, processed and denied for reasons other than lateness.

33. **On October 1, 2021**, Appellant sent the following email to UFT officials: "*I disagree that I am not entitled to a hearing. No citizen can be deprived of the right to be heard. The Constitution does not support your statement. If the UFT has probably agreed to violate the membership's rights without due process of law is different...*" "*It appears to me that it was an arbitrary, unilateral, capricious and unfair decision. I am respectfuly requesting to be present at a hearing to further discuss my case. As part of my due process rights, I am entitled to peruse the*

*supportive evidence that was used to reach that determination. A subpoena may be warranted. Please proceed accordingly*." *See* DktEntry 45, p. 107.

34. In disregard of the provisions on page 10 of the UFT Award and Second Circuit's November 14, 2021 Order in the *Kane* case, Appellant's appeal determinations were issued by HR Connect at the DOE level instead of the Panel of Independent Arbitrators identified by SAMS or the Central Citywide Appeals Panel. *See* DktEntry 58, p. 74.

35. The DOE failed to update the SOLAS system to include the appeal option under the drop-down menu and/or provide the employees with guidance on how to proceed in lieu of its deficiencies, despite Appellant's timely notification. *See* DktEntry 45, pp. 105. There is evidence on record showing that other employees were unable to appeal the denials of their requests for exemptions or accommodations because SOLAS was defective.

36. Appellant was not engaged in cooperative dialogue, in violation of the City's Equal Employment Opportunity Policy ("EEO Policy"). **On February 9, 2022,** Eric Eichholtz (Chief Assistant Corporation Counsel for Employment Policy) testified that the City has an obligation to provide reasonable accommodations to qualified employees with disabilities and those whose sincerely held religious belief, practice, or observance conflicts with a work requirement, unless to do so would cause undue hardship or prevent a direct threat. *See* DktEntry 45, pp. 114-124.

37. **On October 6, 2021**, Appellant requested an accommodation to work remotely, which the DOE deliberately failed to process. *See* DktEntry 45, pp. 88-89, 98-104. **On December 9, 2021**, during a Step 1 Grievance meeting convened by Kim Kill (PS 95Q Principal) and Sheryl Dixon (UFT Representative), Appellant renewed her request for remote work, but it was not addressed. *See* DktEntry 58-2, p. 8. Given the particularities of Appellant's case, the granting of an accommodation to work remotely was reasonable and posed no hardship to the DOE.

38. **On October 29, 2021**, following the denial and non-processing of her requests for accommodations, and out of desperation, Appellant reached out to Chancellor Meisha Porter seeking help regarding her requests for accommodations, placement on LWOP and blocking of

her email account, among other issues. *See* DktEntry 45, pp. 146-147. To date, Appellant's communication remains unacknowledged.

39. **On November 19, 2021**, Appellant sent a letter to Chancellor Porter concerning the processing of her application for a medical exemption, request for remote work, blocking of her email account and her prospective application for a religious exemption. *See* DktEntry 58-1, pp. 11-12. Appellant did not receive an official acknowledgement to her communication.

40. **On November 21, 2021**, following the Second Circuit's November 14, 2021 decision in *Michael Kane, et al v. Bill De Blasio, et al; Matthew Keil, et al v. The City of New York, et al*, where defendants conceded that the process and standards they had used to consider religious exemption applications and appeals was "constitutionally suspect," and allowed non-Plaintiffs to apply for the same injunctive relief, Appellant requested a religious exemption by sending a letter to Chancellor Porter and other DOE-UFT officials via her personal email. In her letter, Appellant stated that **she was unable to file her application via SOLAS because her DOE email account was inactive since October 15, 2021**. *See* DktEntry 45, pp. 90-94. The DOE blocking of Appellant's email account impeded her communication with the appropriate personnel in a meaningful and timely manner. *See* DktEntry 45, p. 150.

**Appellant's Untimely Placement On Leave Without Pay And Termination**

41. **On October 4, 2021**, while Appellant was awaiting a decision on her medical exemption appeal, the DOE administratively separated and placed her on LWOP, in violation of Section I. of the UFT Award, as aforementioned. *See* DktEntry 58, p. 75.

42. **Appellant was in compliance with the Vaccine Mandate at the time she was placed on LWOP** as her appeal on the denial of her application for a medical exemption remained pending and undecided. The denial was not issued until October 13, 2021. The final decision was issued by HR Connect at the DOE level rather than the Panel of Arbitrators appointed by SAMS, which constitutes a departure from the established procedures in Section G. of the UFT Award. Appellant was to remain on payroll until at least October 13, 2021, the date HR Connect rendered a final decision on her request. *See* DktEntry 58-1, p. 8; DktEntry 45, p. 102, 150. The

DOE's failures to adhere to the provisions of the UFT Award constitute an adverse employment action against Appellant. The UFT failed to come to her aid and advocate on her behalf.

43. **On October 15, 2021**, while placed on LWOP, the DOE blocked Appellant's email account, as aforementioned. **On the same date**, Appellant sent the following email to Ellie Engler (Executive Assistant to the UFT President) and other UFT officials: "*Please be informed that I do not have access to my DOE emails. Earlier this morning (October 15, 2021), I called the IT Department and spoke with Mr. Remy. He told me that it appears that access to my account has been blocked*." Appellant's email account was never restored despite her timely notification to the DOE and UFT. *See* DktEntry 45, pp. 94, 97, 101, 147, 149, 150.

44. **On November 29, 2021**, pursuant to the provisions of the UFT Award and CBA, Appellant sent an email to Mulgrew requesting that the UFT bring a claim directly to SAMS for expedited resolution because the UFT Award was not created and implemented in good faith. *See* DktEntry 45, pp. 95, 96, 98. **On November 30, 2021**, Beth Norton (UFT General Counsel) denied Appellant's request alleging that the DOE was not processing applications that came in after October 4, 2021, clarifying that the UFT was not in agreement. The UFT derelicted its duty of fair representation by not honoring and processing Appellant's grievance requests, given the fact that the DOE did not adhere to the terms and provisions of the UFT Award and CBA. The UFT failed to seek relief in state court. **Under CPLR § 7511(b)(1)(iii),** an arbitration award shall be vacated.

45. **On November 30, 2021**, Appellant filed a Step 1 Grievance for improper placement on LWOP. *See* DktEntry 45, p. 97, DktEntry 58-2, pp. 7-9. **On April 25, 2022**, the UFT declined to advance her grievance to Step 2. *See* DktEntry 58-2, pp. 10-11.

46. **On November 30, 2021**, following a conversation with some colleagues, Appellant sent a letter to Chancellor Porter and other DOE-UFT officials informing them that she had not been served with a Final Notice of Placement on Leave Without Pay. *See* DktEntry 45, pp. 148-149. The Chancellor provided no response although it is the public officials' first duty is to answer and serve We The People.

47. **In late November 2021, the group Educators for Freedom** conducted a survey of employees who wanted to file Individual and/or Group grievances before the DOE and SAMS to challenge the procedures used to implement the UFT Award and to address violations of the CBAs. **Teacher Group Grievance Email Template** and **Participating Grievant Forms were created** on Google. Employees selected a **Lead Grievant** per discipline to facilitate the grievance process. Regrettably, the unions declined to file the grievances, in violation of the procedures set forth in **Article 2 of the CBA**: "*Where a substantial number of employees in more than one school have a complaint arising from the action of authority other than the principal, or CSE Chairperson, the Chapter, upon their request, may initiate a group grievance in their behalf*."

48. **On January 31, 2022**, the DOE allegedly sent a **Non-Personalized Employment Termination Notice** to the unvaccinated employees stating that they would be terminated on February 11, 2022. The email/notice was not addressed to any employee in particular. Appellant did not receive the Notice as her email account was inactive since October 15, 2021.

49. **On February 8, 2022**, following notification from the UFT that unvaccinated workers would be terminated, Appellant requested that the UFT file an Emergency Motion with the Court for an Injunction to stop the wrongful terminations: "*We deserve fair representation so justice can be served*." *See* DktEntry 45, p. 153. The UFT did not follow through.

50. **On February 9, 2022**, Appellant requested a 3020-a hearing seeking reinstatement pending a decision on her case. See DktEntry 45, pp. 153-154; DktEntry 58-2, p. 18. **On February 11, 2022**, she submitted an Addendum to her request for a 3020-a hearing by sending an email to DOE and UFT officials. She included the New York State Education Department ("NYSED"). *See* DktEntry 45, p. 154; DktEntry 58-2, pp. 12-17. To date, Appellant's request has not been acknowledged, processed or scheduled within the required sixty (60) days of the pre-hearing conference, in contravention of **New York State Education Law § 3020**. This violation of both the CBA and Education Law §3020-a is a grievable issue that the UFT failed to address.

51. In previous proceedings and submissions, the UFT claimed that Appellant was terminated for incompetence and insubordination. Assuming that she was unqualified for the job, she was entitled to a hearing because "incompetence" is a disciplinary action that requires service of a charge before dismissal. The same applies to "insubordination." Further, there are documents on record showing that several employees were denied unemployment insurance benefits as the DOE misled the New York State Department of Labor ("NYSDOL") by claiming that they were separated from employment because of misconduct, resignation or quitting.

52. The UFT failed to advocate for proper service of documents related to employment termination and 3020-a hearings on behalf of Appellant and similarly situated employees despite being aware of the allegations and violations described herein. **On April 25, 2022**, the UFT ADCOM Committee admitted that Appellant was not lawfully separated from her employment: "*At your hearing, you stated that you were terminated without notice… You stated that you have requested a 3020-a hearing.*" *See* DktEntry 45, pp. 156-157. **On December 7, 2023**, the UFT ADCOM Committee acknowledged that Appellant was improperly terminated: "*At your hearing you stated you consider yourself a DOE employee who has not been terminated. You said that you never received notice, and that you are an active employee who has not been paid since October, 2021. You claimed that the DOE illegally placed you on a leave without pay, that you received notice of that leave on 10/2/21, and that was the last document you received. You said you never received your final notice of termination. You stated you were entitled to a 3020a hearing, and requested one in February, 2022, but have not received any response.*" *See* DktEntry 45, pp. 171-172. **On July 25, 2025**, the UFT ADCOM Committee recognized that Appellant was not officially separated from her employment: "*At your appeal hearing you said that state law requires that employees receive final notice prior to termination. You said you were blocked from DOE email and therefore did not receive the notice. You said that proper notice should be done in person not email.*" *See* DktEntry 58-3, p. 6-7.

53. **On March 24, 2022,** Mayor Eric Adams issued Executive Order 62 lifting the Vaccine Mandate and granting exemptions for influential athletes and performers. **On March 25, 2022**, Appellant sent an email to Mulgrew and other officials requesting that the UFT take legal action to demand equal treatment for the public sector. The UFT did not act.

54. **On April 10, 2022**, then City employee Mayor Eric Adams announced that he had contracted COVID-19 on his Twitter account: "*I've tested positive for #COVID19 and am following my doctors orders by isolating. Thankfully, I'm vaccinated and boosted so symptoms are minimal. I'll work remotely and I know we've got the best team in the country at work at City Hall. We'll continue to #GetStuffDone._7:34 PM · Apr 10, 2022.*" Reportedly, he granted himself an accommodation to work remotely in an expeditious manner, without following the protocol required for All City employees. **On April 11, 2022**, Appellant sent Mayor Adams an email requesting information about the process. The City procrastinated by extending the time to respond to FOIL-2022-002-00804, in violation of the Freedom of Information Law ("FOIL"), which reaffirms citizens' right to know how the government operates. Disparate treatment is unlawful regardless of the position.

55. **In late April 2022**, it was reported that DOE employees were being investigated for using fraudulent COVID-19 vaccine cards to keep their jobs. The UFT took legal action on their behalf, alleging that they were entitled to due process. **In a June 27, 2022** decision, Arbitrator Scheinman ruled in favor of the educators accused of submitting fake vax cards. He is the same arbitrator who issued the UFT Award that denied Appellant and similarly situated employees due process. The accused educators were reinstated.

56. **On June 30, 2022**, **the UFT Award expired** as it was not mutually extended by the parties, as stipulated **on page 7**: "*This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties*." Mulgrew confirmed the expiration of the UFT Award in a **September 12, 2021** email to the UFT members: "*This agreement is in effect for this school year only*." *See* DktEntry 58, pp. 122-123. **On July 11, 2022**, in response to Appellant's June 30, 2022 email to UFT and DOE officials, David Campbell (Director of the UFT Grievance/Arbitration Department) corroborated: "*The Scheinman arbitra on award applies to the 2021-22 school year... The DoE has yet to issue it's policy regarding the vaccine mandate or possible accommoda ons for the 2022-23 school year.*" *See* DktEntry 45, pp. 169-170.

57. **On June 30, 2022**, Appellant requested that the UFT file a grievance seeking reinstatement upon expiration of the UFT Award. **On July 11, 2022,** the UFT declined to file a

grievance. **On July 13, 2022**, Appellant asked the UFT to reconsider its decision. *See* DktEntry 45, pp. 169-170. The appellant has yet to receive a response.

58. **On July 1, 2022**, the DOE violated the terms of the UFT Award by failing to reinstate Appellant and similarly situated individuals upon its expiration, which constitutes a breach of contract. The UFT was derelict in its duty of fair representation by not pushing hard for Appellant's reinstatement, requiring remedy from this Court in the interest of justice.

59. **In October 2022,** Appellant filed a grievance on the denial of per session activities. **On December 7, 2023**, the UFT declined to proceed to the Chancellor's level despite acknowledging that Appellant had not been served with a termination notice and her request for a 3020-a hearing was pending and undecided. *See* DktEntry 45, pp. 171-172.

60. **On February 14, 2023,** it was reported that the DOE had been sending the fingerprints of unvaccinated employees to the FBI with Problem Code flags, denoting misconduct and criminal behaviors, and resulting in ineligibility for future employment. **On October 14, 2021 and May 23, 2022,** Appellant sent emails to Gene Mann (UFT Representative), asking to look into an alleged Office of Personnel Investigation ("OPI") incident on her file, which she was unaware of. The UFT derelicted its duty of fair representation by failing to investigate this matter or file a grievance, as requested. *See* DktEntry 45, pp. 162-168.

61. **On March 17, 2025**, Appellant filed a Step 1 Grievance against the DOE under the grounds of lack of service, failure to process a 3020-a hearing request and to reinstate her upon expiration of the UFT Award. *See* DktEntry 58-3, p. 5. Principal Hill failed to convene a Step 1 conference and render a decision within the required five (5) school days, permitting automatic progression to Step 2 under the CBA. *See* DktEntry 58-3, pp. 5-12. The UFT Grievance Department declined to act. **On May 28, 2025**, Appellant appealed the UFT's decision not to proceed to Step 2. **On July 15, 2025**, the UFT ADCOM Committee declined to move forward to Step 2 despite these procedural violations. *See* DktEntry 58-3, pp. 6-7. **On July 18 and 29, 2025**, Appellant asked for reconsideration of the July 15th decision. *See* DktEntry 58-3, pp. 8. Appellant is awaiting acknowledgement or a response.

62. As a union, the UFT owes a duty to its members to ensure that their rights are protected, but it fell short in this case. The UFT failed to sufficiently represent Appellant by not pursuing her appeals for an exemption or accommodation to the Vaccine Mandate and filing grievances to the Chancellor or arbitration levels to address these numerous labor and constitutional violations, thereby breaching its duty of fair representation. *See* DktEntry 45, pp. 88-89, 95-97, 153-154, 156-157, 162, 169-172.

**Procedural History Of The Case**

63. **On March 3, 2022**, Appellant filed a Discrimination Charge against the DOE and UFT (together, "Respondents") with the EEOC, alleging that she was discriminated against based on her disability, religious beliefs and age, and she also experienced retaliation. *See* DktEntry 45, pp. 65-68. The EEOC exceeded its authority and narrowed the scope of her Charge. It excluded age discrimination and the UFT from the initial investigation. *See* DktEntry 45, pp. 65-78. The Charge was transferred from the New York District Office to the San Juan Local Office for processing. Appellant was never contacted by Luis Calzada, the assigned Investigator. After Appellant reached out to the EEOC Field Management Office in Washington, D.C., the Charge against the UFT was opened for investigation and adjudication by the New York Regional Office. Madeline McGrath was the Investigator assigned to handle this case.

64. **On September 7, 2023 and March 31, 2024,** the EEOC dismissed Appellant's Charge against the DOE and UFT, respectively. *See* DktEntry 45, pp. 69, 74. Dismissal of her Charge was arbitrary, capricious, irrational, and undertaken in bad faith. The EEOC made an error by dismissing a Charge that meets the necessary standards for processing. The EEOC was biased by treating Appellant's case differently from others that alleged similar discrimination by employers such as the United Health Care Services and Urbana School District No. 116. *See* DktEntry 45, pp. 105-113. The EEOC knowingly disregarded the facts presented and overwhelming evidentiary proof of Respondents' arbitrary and discriminatory conduct that led to Appellant's unlawful termination. Shielding the DOE and UFT from accountability was an error as the EEOC deprived Appellant of her statutory and constitutional rights. The government, through EEOC, failed to provide an impartial tribunal that the Court needs to rectify.

65. Following the dismissal of her Charge, Appellant requested reconsideration to annul the EEOC's determination in this case, and remand for a full and lawful adjudication, but the EEOC declined to move forward. *See* DktEntry 45, pp. 65-78. **On April 19, 2024**, Appellant filed a Notice of Appeal/Petition Complaint with the EEOC Office of Federal Operations, seeking that the Right-to-Sue letters be rescinded, but it has not been processed as of yet. *See* DktEntry 45, pp. 52-85.

66. **On April 30, 2024**, proceeding pro se, Appellant brought this action alleging that the EEOC and several of its officials mishandled her Charge she had filed against the DOE and UFT, in violation of the federal Constitution, and a host of federal and state discrimination laws. Appellant sought an order for injunctive relief pending adjudication of this matter in the interest of justice. *See* DktEntry 1.

67. **On November 20, 2024**, Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim. *See* DktEntry 40.

68. **On November 25, 2024**, Appellant filed an Affirmation in Opposition to Defendants' Motion to Dismiss. *See* DktEntry 45.

69. **On December 14, 2024**, Defendants filed a Reply Memorandum of Law in further Support of Defendants' Motion to Dismiss. *See* DktEntry 46.

70. **On September 3, 2025**, Judge Ronnie Abrams issued a Memorandum Opinion and Order granting Defendants' Motion to Dismiss and directing the Clerk of the Court to close this case. The Court dismissed the claims against the EEOC for lack of subject matter jurisdiction because the United States has not waived federal immunity for such claims. The Court also dismissed Appellant's statutory claims against the EEOC officials because the relevant statutes do not provide for individual liability, and dismissed her constitutional claims because they did not fall within a recognized *Bivens* context. The Court recognized that Appellant has an alternative remedy available under *Bivens*. Having dismissed all federal claims, the Court declined to

exercise supplemental jurisdiction over Appellant's state-law claims. The court has not made a final ruling in Appellant's state-law claims. *See* DktEntry 47.

71. The Court did not grant injunctive relief as it lacks the power to direct the EEOC to reinstate Appellant because she was not employed by the EEOC; the DOE was her employer nor can the Court order the DOE to provide relief to Appellant since the DOE is not a party to the lawsuit and the Court has no power to compel it to take any action. Judge Abrams added that under *Bivens*: "*she has an alternative remedy available because she can sue her employment directly for discrimination*." *See* DktEntry 47, p. 12.

72. The Court correctly identifies that the DOE and UFT have interests in this proceeding that may be affected by the Court's decision. Appellant does not dispute that these entities are necessary parties. What she disputes is the dismissal of her lawsuit. Pursuant to Federal Rules of Civil Procedure ("FRCP") and controlling case law compel joinder, not dismissal. The Court should grant Appellant leave to amend the Original Complaint to join the DOE and UFT and other officials as necessary party defendants.

73. **On September 15 and 17, 2025**, following the dismissal of her suit, Appellant moved to alter or amend the judgment by seeking an extension of time to file a Motion for Leave to Amend the Complaint and Change the Caption of the Case or Motion for Reconsideration to cure the deficiencies related to jurisdiction, competence, parties and claims stated in the Original Complaint. *See* DktEntries 49, 51, 52.

74. **On September 23, 2025**, Judge Abrams granted Appellant's application, noting: "*The Court interprets Plaintiff's motion as a request for a 30-day extension of time to submit a motion seeking both (1) to alter or amend a judgment under Rule 59(e) and 2) leave to amend the Complaint under Rule 15(a)(2). See Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 142 (2d Cir. 2020) ("[A] party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)*"). *See* DktEntry 56.

75. **On October 30, 2025**, following granting of an extension of time, Appellant filed a Motion To Alter or Amend Judgment and for Leave to File an Amended Complaint. *See* DktEntry 57.

76. **On October 31, 2025**, Appellant filed an Amended Complaint asserting well-founded claims against a new set of municipal and union defendants, supported by tangible evidence, permitting this matter to proceed to discovery on the merits. *See* DktEntry 58. By excusable mistake, the EEOC and its federal officials were not included as parties in the Amended Complaint although they have legal interest, liability, or presence in the underlying judgments or orders being appealed.

77. **On June 25, 2026**, Judge Ronnie Abrams issued a Memorandum Opinion and Order denying Appellant's Motion to Alter the Judgment and for Leave to File an Amended Complaint. *See* DktEntry 60.

78. This action is not permanently closed as the underlying issues remain unresolved and the Court has not made a final ruling on its merits in Appellant's state-law claims, allowing her to refile her claims within the remaining statute of limitations.

79. The Standard for leave to amend is liberal. Good Cause exists to permit late joinder: (1) Pro Se Status: Appellant appears without Counsel. Courts grant pro se litigants substantial latitude in procedural matters. A pro se petitioner's failure to identify all necessary parties at inception should not result in forfeiture of an otherwise meritorious claim. (2) Absence of Prejudice: The DOE and UFT are institutional actors with full knowledge of the underlying facts. Discovery has not occurred. The court has not made a final ruling in Appellant's state-law claims. No party will suffer surprise or prejudice from being joined at this stage. (3) Merit of the Underlying Claim: Where, as here, the proposed amendment or joinder arises from a demonstrably meritorious claim. (4) Interests of Justice: Without the DOE and UFT, the Court cannot grant complete relief. The DOE imposed Appellant's suspension and termination. The UFT, as exclusive bargaining representative, had an obligation to represent Appellant's interests during the exemption process and its aftermath. The EEOC had an obligation to fully investigate

and adjudicate Appellant's Charge. Dismissal without permitting joinder would leave Appellant without any remedy for admitted constitutional and administrative violations.

80. Appellant's proposed federal and state claims against the DOE and UFT are not time-barred. Pursuant to FRCP 15, a party may amend and supplement pleadings as a matter of course, and the Court may permit the pleadings to be amended: before trial, during trial and after trial. According to FRCP 15(b), the court should freely permit amendments during and after trial to conform to the evidence and to raise an unpleaded issue. FRCP 15(c) permits relation back of amendments. Pursuant to FRCP 15(d), on motion, a court may permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time. Appellant respectfully asks the Court to grant this relief in the interest of justice.

81. The proposed amendment filed on October 31, 2025 to add claims is not futile because those claims are not outside the statute of limitations. Both the Original and Amended Complaints were filed within the three-year statute of limitation. Over the past several years, Appellant has engaged in sustained advocacy and outreach seeking redress of grievances, accountability and reinstatement. Regrettably, her formal communications have received minimal to no official response. Appellant can relate her claims back to the filing date of the Original Complaint because she has not been officially terminated, as confirmed by the UFT ADCOM Committee's decision issued on July 15, 2025. *See* DktEntry 58-3, pp. 5-12. Appellant further alleges that her claims against the EEOC are not untimely as the agency has not processed and issued a decision on her Notice of Appeal/Petition Complaint filed on April 19, 2024. See DktEntry 45, pp. 52-85. Continued omission and lack of response on the part of the Defendants-Appellees should lift the statute of limitations.

82. **On July 20, 2026**, Appellant filed a Notice of Appeal. *See* DktEntry 61. **On July 21, 2026**, the Appeal Record was sent to the United States Court of Appeals for the Second Circuit.

83. **On July 22, 2026**, a the Court of Appeals generated a Docketing Notice reflecting the United States Equal Opportunity Commission, Luis Calzada, William Sanchez, Madeline McGrath, Alexander Adeschenko, City of New York, New York City Department of Education, New York City Department of Health and Mental Hygiene, School District 29, Bill de Blasio, Eric Adams, David (Dave) Chokshi, Commissioner Ashwin Vasan, Meisha Porter, David Banks, United Federation of Teachers and Michael Mulgrew as parties and Defendants-Appellees in this appeal. The Docketing Notice also listed Damian Williams and Yaw Gyebi, Jr. as Defendants. The Court added Attorney Benjamin H. Torrance for Appellees Alexander Adeschenko, Luis Calzada, Madeline McGrath, EEOC and William Sanchez. *See* DktEntry 1.

84. **On July 22, 2026**, the Court of Appeals assigned a Docket Number and filed a Notice of Civil Appeal, with District Court Docket, on behalf of Appellant Aura Moody (USCA Docket No. 26-1997). The Court also opened a Civil Appeal on behalf of Appellant. *See* DktEntries 2, 4.

85. **On July 22, 2026**, the Court of Appeals added Attorney Steven Banks for Appellees City of New York, New York City Department of Education, New York City Department of Health and Mental Hygiene and School District 29. *See* DktEntry 5.

86. **On July 22, 2026,** the Court of Appeals sent Instructional Forms to Appellant: Acknowledgment and Notice of Appearance, and Civil Appeal Transcript Information (Form D-P) for Pro Se Appellants to be served on All named Appellees and filed them with the Court. *See* DktEntries 6.

87. **On July 22, 2026**, Appellant served the Acknowledgment and Notice of Appearance, and Form D-P on All named Appellees. A Docketing Notice reflecting the UFT and Michael Mulgrew as parties and defendants in this appeal was served on the UFT General Counsel Beth Norton. *See* DktEntries 10, 11.

88. **On July 23, 2026**, the Court sent a Notice and Instructional Forms to the United Federation of Teachers, and requested a response 30 days from the date of this letter. *See* DktEntry 8.

89. **On July 23, 2026**, the Court issued a Notice of Defective Filing of the documents served by Appellant on July 22, 2026. She was instructed to serve a copy of the Acknowledgment and Notice of Appearance, and Form D-P on Attorney Steven Banks, the United Federation of Teachers and pro se Appellee Michael Mulgrew. *See* DktEntries 12, 13, 14, 16.

90. **On July 30, 2026**, Appellant cured the deficiencies and served the corrected Acknowledgment and Notice of Appearance, and Form D-P on All named Appellees. *See* DktEntries 20, 21.

91. **On August 5, 2026,** the UFT and Michael Mulgrew (together, "Movants"), through Counsel, filed a Notice of Appearance to preserve their ability to defend themselves against Appellant's claims, as alleged by them. *See* DktEntry 27.

92. **On August 10, 2026**, Attorney Ximena Castro advised Appellant that Movants would file a Motion to Withdraw Appearance and Correct the Docket Designation, to wit, she opposed, as Movants' own papers acknowledge: "*Undersigned counsel has conferred with pro se plaintiff-appellant Moody who will oppose the motion*." *See* DktEntry 32, p. 3.

93. **On August 11, 2026**, Movants, through counsel, filed a Motion to Withdraw Appearance and Correct the Docket Designation, alleging that Appellant never served them with process, and that they were not parties, defendants, or participants in the underlying suit or prior proceedings in the United States District Court for the Southern District of New York under case No. 1:24-cv-3320. *See* DktEntry 32.

94. Appellant respectfully submits her opposition to Movants' motion seeking an order permitting the withdrawal of appearance entered on their behalf from the active docket and caption. For the reasons that follow, the motion should be denied, or, in the alternative, held in abeyance pending Movants' production of competent, record-based evidence supporting the factual assertions on which the motion depends.

## ARGUMENT

### I. The Motion Rests On Unsupported Factual Assertions That Cannot Be Resolved On This Record

95. Movants ask this Court to amend the official caption of a pending appeal — effectively terminating Appellant's asserted claims against them without adjudication — based on a series of factual representations that are not accompanied by any competent supporting evidence. Specifically, Movants assert, without a certified copy of the District Court Docket Sheet, the operative complaint, any summons, any affidavit of a process server, or a sworn declaration from a person with personal knowledge, that: (a) they were never served with process in the underlying action; (b) they were not parties, defendants, or participants in the proceeding before the United States District Court for the Southern District of New York, Docket No. 24-cv-3320; and (c) Appellant's prior claims against them in other forums were "fully adjudicated, dismissed, appealed, and ultimately dismissed." Mot. ¶¶ 2, 4.

96. These are precisely the sort of disputed, record-dependent factual questions that motion practice under FRAP 27 is not designed to resolve. A Rule 27 motion is not a substitute for a properly supported dispositive motion, and this Court should not amend the official docket and caption of a pending appeal — thereby foreclosing a pro se litigant's claims against a named party — on the strength of the unsworn representations of that party's own Counsel alone.

97. Notably, Movants' own motion undercuts its central premise. Movants acknowledge that a Docketing Notice was generated on July 22, 2026, reflecting UFT and Mulgrew "as parties and defendants in this appeal," and that Counsel thereafter filed a Notice of Appearance specifically "to preserve" Movants' "ability to defend once more against Plaintiff's claims." Mot. ¶¶ 1, 3. Movants do not explain the source of that Docketing Notice, whether it derived from the District Court's own docket or complaint, or why it would have listed Movants as parties if, as they now contend, Movants had no presence whatsoever in the underlying action.

**II. Withdrawal Of Counsel's Appearance Is Narrower Relief Than Removal Of A Party From The Caption, And The Motion Improperly Conflates The Two**

98. The relief identified in the Motion Information Statement — withdrawal of the appearances of Robert T. Reilly and Christopher Lewis — and the relief actually requested in the body of the motion — an order directing the Clerk to amend the official caption to remove UFT and Mulgrew entirely — are not the same thing. Withdrawal of an attorney's appearance under FRAP 27 and this Court's Local Rules concerns the attorney-client relationship of record; standing alone, it does not adjudicate whether a named litigant remains a proper party to the appeal. To the extent Movants seek the latter, more consequential relief — dismissal of a party from the case — that relief should be sought, and evaluated, on its own terms and on a complete record, not folded into what is styled as a routine, purportedly unopposed motion to withdraw an appearance.

**III. Appellant Disputes The Factual Predicate Of The Motion And Will Be Prejudiced If It Is Granted Without A Record Basis**

99. Appellant disputes Movants' characterization that they were not parties, defendants, or participants in this action. The UFT and Mulgrew have legal interest, liability, or presence in the underlying judgments or orders being appealed, and they should be held accountable for breaching the CBA and other applicable federal and state laws-regulations. Movants actually are in active concert or participation in the conduct giving rise to discrimination that led to the filing of Appellant's lawsuit. The DOE and UFT are named Respondents or parties to the Charge filed by Appellant with the EEOC on March 3, 2022. *See* DktEntry 45, pp. 65-68.

100. The record shows entries reflecting service of appearance, correspondence, or prior administrative/court filings and rulings that bear on the relationship between the claims at issue and the UFT and Mulgrew. They knew or should have known that the action would have been brought against them. In their motion, Movants admit that Appellant has sued them in administrative and at law forums**.** *See* DktEntry 32, p. 3.

101. If the Court grants the requested relief without requiring Movants to substantiate their assertions against the Certified District Court Record, Appellant will be foreclosed — without any judicial determination on the merits — from pursuing her claims against the UFT and Mulgrew, based solely on Movants' own self-serving representations. That result would be particularly prejudicial to a pro se litigant and is not a step this Court should take on an incomplete record.

### IV. The Motion Is Procedurally Premature And Should Be Denied, Or Referred To The Merits Panel, Or Held In Abeyance Pending A Complete Record

102. Because resolution of the motion turns on disputed questions — service of process, party status in the District Court proceeding, and the legal effect of prior administrative and state-court proceedings referenced in Movants' own papers — Appellant respectfully submits that these issues are better suited to determination by the panel assigned to decide the merits of this appeal, with the benefit of full briefing and the certified record, rather than resolution on an expedited motions calendar without an evidentiary basis.

## RELIEF REQUESTED

103. For the foregoing reasons, Appellant respectfully requests that this Court:

(a) deny the motion in its entirety; or, in the alternative,

(b) direct Movants to file, within a time set by the Court, a certified copy of the District Court docket sheet and the operative complaint in SDNY Case No. 24-cv-3320, together with competent sworn evidence establishing lack of service and non-party status, before the Court rules on the motion; or, in the further alternative,

(c) refer the motion to the panel assigned to decide the merits of this appeal for determination together with the merits; and

(d) grant such other and further relief as this Court deems just and proper.

Dated: Saint Albans, New York
August 19, 2026

Respectfully submitted,

_______________________

**AURA MOODY**
112-26 197 Street
Saint Albans, NY 11412
(347) 248-5208
Quinonesmoody@aol.com
*Plaintiff-Appellant, Pro Se*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

_______________________

Aura Moody
Plaintiff-Appellant, Pro Se
112-26 197 Street
Saint Albans, NY 11412

Queens, New York, August 19, 2026

**PLAINTIFF-APPELLANT'S OPPOSITION TO THE UNITED FEDERATION OF TEACHERS AND MICHAEL MULGREW'S MOTION TO WITHDRAW APPEARANCE AND CORRECT THE DOCKET DESIGNATION**

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2026, I served a true and correct copy of the foregoing Opposition upon the following, by e-mail: "**Plaintiff-Appellant's Opposition to the United Federation of Teachers and Michael Mulgrew's Motion to Withdraw Appearance and Correct the Record Designation**."

Christopher Lewis, Esq. — Counsel for United Federation of Teachers and Michael Mulgrew
Office of Robert T. Reilly, 120 Broadway, Suite 1360, New York, NY 10271;
Christopher.Lewis@nysut.org

Danielle J. Marryshow, Esq. — Attorney for Federal Defendants
U.S. Attorney's Office, SDNY, 86 Chambers Street, New York, NY 10007;
Danielle.Marryshow@usdoj.gov

Tahirih M. Sadrieh, Esq. — Attorney for Municipal Defendants
Office of the Corporation Counsel of the City of New York, 100 Church Street, New York, NY 10007; tsadrieh@law.nyc.gov

Aura Moody

AURA MOODY, Pro Se